# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **PHYLLIS A. BARNES,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 4:08-cv-0323-RDP |
| } | |
| **MICHAEL J. ASTRUE, Commissioner** } | |
| **of Social Security,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

Plaintiff Phyllis A. Barnes brings this action pursuant to Section 205(g) of the Social Security Act (the "Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and Disability Income Benefits ("DIB"). *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Procedural History**

Plaintiff filed her application for a period of disability and DIB under Title II, as well as her application for Title II disabled widow's benefits and her Title XVI application for supplemental security income ("SSI") on December 7, 2004.[1] (Tr. 49, 161, 171). Plaintiff's applications were denied and she requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 31, 36). Plaintiff's case was heard by ALJ Jerome L. Munford on August 29, 2006. (Tr. 15-26, 181-212).

---

[1]The ALJ indicated that Plaintiff filed her application on November 18, 2004. (Tr. 18). This statement seems to rely on the filing date listed on the Social Security Administration Disability Determination and Transmittal form. (Tr. 174). All three applications, however, are dated December 7, 2004.

In his July 18, 2007 decision, the ALJ determined that Plaintiff was not eligible for a period of disability or DIB, disabled widows benefits, or SSI because she failed to meet the disability requirements of the Act and retained the residual functional capacity ("RFC") to perform the exertional demands of light work. (Tr. 15-26). The Appeals Council denied Plaintiff's request for review of the ALJ's decision on December 21, 2007. (Tr. 7-9). Within the required time limitations, Plaintiff filed this civil action.

Plaintiff was born on February 17, 1945 and has a tenth grade education. (Tr. 49, 188). There is no evidence that she has performed substantial gainful activity since her alleged onset of disability, June 1, 2004. (Tr. 49, 59, 191).

At the hearing, Plaintiff testified that she experiences an inability to stand and walk for any appreciable amount of time and, due to pain, must sit or lie down often. (Tr. 190). She stated that her nerves began to bother her after her husband's death. (*Id.*). She testified that she lives alone, gets up between 6:30 and 7:30 a.m., and does a little cleaning for about ten minutes at a time, but then must sit or lie down and rest because of leg pain and numbness. (Tr. 191-92). She also testified that she could stand and walk for up to fifteen minutes at a time, could probably lift ten pounds, and that in a ten-hour day, she probably lies down for five hours. (Tr. 193-94). She averred that she is weak in the mornings and "can't hardly get up and go." (Tr. 195). According to her testimony, she receives no help with her housework. (Tr. 196). She stated that she has a problem with her nerves and depression. (Tr. 197). She said that the least little thing upsets her and that she goes to pieces; she has crying spells and breaks down and cries twice a week. (Tr. 197). She testified that she has high blood pressure, which is aggravated by her condition. (*Id.*). She stated that she occasionally goes out to eat with her daughter. (Tr. 199).

Plaintiff also testified that she cannot afford medicine for depression and that trying to walk aggravates her back and leg problems. (Tr. 197, 200). Her testimony indicated that she often experiences leg numbness, which goes away after five minutes if she sits or lies down. (Tr. 202). She claims to experience back pain when walking, standing, or bending. (Tr. 202-03). She stated that she has a driver's license and drives and visits with her children. (Tr. 204). She testified that she was drawing food stamps, which ended when she began receiving widow's benefits. (Tr. 204-05).

Elliott Saltz, M.D., is Plaintiff's family practitioner. (Tr. 114-26). His records through June 11, 2004 indicate treatment for general care and blood pressure management. (*Id*.). Dr. Saltz's records do not indicate any back pain or other conditions that would make Plaintiff unable to work. (*Id*.).

On January 12, 2005, Plaintiff presented to Quality of Life Health Services with a complaint of elevated blood pressure (154/100) and needing her medications refilled. (Tr. 128-31). Her physical examination was otherwise unremarkable. (*Id*.). Plaintiff specifically denied experiencing any pain. (*Id*.).

On January 26, 2005, Plaintiff presented to Henry Born, M.D., for a disability physical examination. (Tr. 132-34). Plaintiff stated that she could not work because of severe back pain. (Tr. 132). She reported that her pain began five years before and over time has slowly and steadily worsened. (*Id*.). She reported pain in her hips, legs, and thighs. (*Id*.). She stated that she hurts "just about all over." (*Id*.). Plaintiff indicated that both shoulders hurt, with the right worse than the left. (*Id*.). She believed that her bones were deteriorating and told Dr. Born that she had been working until June 2004, but stopped because of pain. (*Id*.). She said that if she lies flat on her back at night,

she can get some relief, and during the day, from time to time, she often squats down, which affords some temporary relief. (*Id.*). She also said that it hurt for her to stand or walk, and the more she stands or walks, the more it hurts. (*Id.*). Dr. Born noted that Plaintiff has had hypertension for twenty years. (*Id.*).

On examination, Plaintiff was oriented in three spheres, and appeared somewhat anxious and perhaps also depressed. (Tr. 133). There was no thought disorder noted and she appeared to be of average intelligence. (*Id.*). Cranial II-XII were intact. (*Id.*). The optic disc was benign (*Id.*). Examination of the upper extremities revealed that the muscle strength was intact. (*Id.*). There was neither atrophy nor fasciculations noted. (*Id.*). Deep tendon reflexes were symmetrical and were 2+ at the elbows and 1+ at the wrists. (*Id.*). No sensory change was noted. (*Id.*).

Examination of the lower extremities revealed intact muscle strength with no atrophy. (*Id.*). No fasciculations were noted. (*Id.*). The deep tendon reflexes were symmetrical and were 2+ at the patella tendons and 2+ at the Achilles tendons. (*Id.*). Ankle clonus was absent. (*Id.*). Babinski sign was negative. (*Id.*). Her gait looked fairly normal, and she could walk up and down the hall at a reasonable pace without distress. (*Id.*).

Plaintiff had normal range of motion in the cervical spine. (*Id.*). There was also normal range of motion in the shoulders, elbows, wrists, hands, and fingers. (*Id.*). There was no pain, no swelling or erythema, no tenderness, and no bogginess at any of these joints. (*Id.*). Plaintiff did have some degenerative arthritis at the DIP joints of mild to moderate degree and she had Heberden's nodes at several of her DIP joints. (*Id.*). Examination of the lumbosacral spine revealed good posture, and Plaintiff could flex in the forward direction to 60 degrees. (*Id.*). She had lateral flexion to the right and to the left of 30 degrees. (*Id.*). Straight leg raising was negative to 60 degrees on

the right and on the left. (*Id*.). She had no pain down her legs or in her back. (*Id*.). There was normal range of motion at both hips, knees, ankles, and feet. (*Id*.). There was no pain, no swelling or erythema, no tenderness, and no bogginess at any of these joints. (*Id*.). Plaintiff could walk on her toes and heels adequately and squat and arise quite well. (*Id*.). Her peripheral pulses were intact. (*Id*.).

An x-ray demonstrated the bones of the lumbosacral spine were normally mineralized with a normal lumbar lordosis. (*Id*.). The intervertebral disk margins were well maintained with the exception of L4-L5. (*Id*.). At this level the joint space was narrowed. (*Id*.). Plaintiff also had a grade-III spondylolisthesis of L4 on L5. (*Id*.). There were degenerative changes at this level. (*Id*.). According to Dr. Born, Plaintiff had a fairly unremarkable physical exam. (Tr. 134). It was felt that she might possibly have a spinal stenosis to account for her symptoms. (*Id*.). Dr. Born believed that Plaintiff should have a work-up, including a CT scan to further delineate this abnormality, but observed that some people can have spondylolisthesis and be relatively asymptomatic from the condition. (*Id*.). Accordingly, he was not sure to what extent Plaintiff's symptoms were related to this finding on her x-ray exam. (*Id*.). He also observed that Plaintiff's condition seemed to have deteriorated after the death of her husband, that she had been nervous and depressed, which may have had something to do with some of her symptoms. (*Id*.). Dr. Born's impressions were spondylolisthesis, L4-L5; generalized arthritic aches; and prolonged grief reaction. (*Id*.).

On February 24, 2005, Plaintiff was examined by a radiologist, Nancy Jennings, M.D. (Tr. 135-42). She reported that Plaintiff's primary diagnosis was L4-L5 spondylolisthesis. (Tr. 136). Dr. Jennings completed a physical RFC assessment form wherein she opined that, in terms of an eight-hour work day, Plaintiff's abilities, limitations, and restrictions included the following:

5

occasionally lift and/or carry (including upward pulling) a maximum of 20 pounds; frequently lift and/or carry (including upward pulling) a maximum of 10 pounds; stand and/or walk (with normal breaks) for a total of about six hours; sit (with normal breaks) for a total of about six hours; push and/or pull (including operation of hand and/or foot controls) on an unlimited basis, other than as shown for lift and/or carry; frequently climb ramps/stairs; never climb ladder/rope/scaffolds; frequently balance; frequently stoop; frequently kneel; frequently crouch; frequently crawl; avoid concentrated exposure to environments of extreme cold or heat; work on an unlimited basis at activities involving wetness; work on an unlimited basis in environments of humidity; avoid concentrated exposure to environments of noise; work on an unlimited basis in environments of vibration; work on an unlimited basis in environments of fumes (odors, dust, gases, poor ventilation, etc.). (Tr. 136-39). No manipulative, visual, or communicative limitations were noted or indicated. (Tr. 138-39).

On February 28, 2005, psychologist and disability program psychological expert Gloria Roque, Ph.D., diagnosed Plaintiff with prolonged grief reaction, but concluded that it was not a "severe" impairment. (Tr. 143). In terms of an eight-hour work day, Dr. Roque reported that Plaintiff had the following abilities, limitations, and restrictions: mild restriction of activities of daily living; mild difficulty in maintaining social functioning; and mild difficulty in maintaining concentration, persistence, or pace. (Tr. 153).

**II.   ALJ Decision**

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance

of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. The claimant's RFC consists of what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since June 1, 2004, her alleged date of onset of disability. (Tr. 25). The ALJ determine that Plaintiff has severe impairments of disorders of the lumbar spine and high blood pressure, however, Plaintiff's impairments do not meet or equal any impairment listed in Appendix 1 to Subpart P, 20 CFR, Part 404. (*Id.*). According to the ALJ, Plaintiff's subjective complaints concerning her impairments and their intensity, persistence, and limiting effects were not fully credible due to their inconsistency with

objective clinical evidence and the opinions of Plaintiff's treating and consulting physicians. (Tr. 23-24). The ALJ determined that Plaintiff retains the RFC to perform the exertional demands of light work which allows occasional bending, stooping, or pushing or pulling of the upper extremities, no driving or exposure to unrestricted heights. (Tr. 25).

At the hearing, the ALJ called a vocational expert ("VE") to testify who was familiar with Plaintiff's background. (Tr. 205-11). The VE testified that Plaintiff's past relevant work both as a shift supervisor and grocery store cashier were classified as light, semiskilled work. (Tr. 206). The VE stated that these jobs imparted Plaintiff with no transferable job skills. (*Id*.). When asked to consider Plaintiff's age, education, work experience, and assigned RFC, the VE opined that Plaintiff could return to her past relevant work of shift supervisor. (Tr. 206). Based on the VE's testimony and his assessment of Plaintiff's RFC, the ALJ found that Plaintiff is capable of performing past relevant work as a shift supervisor. (Tr. 26).

### III.     Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the expiration of the period for Plaintiff to file objections, reversed and remanded for further consideration. (Doc. #8 at 1). Plaintiff asserts one reason why this court should grant the relief sought: the ALJ improperly evaluated the credibility of Plaintiff's complaints of pain.

### IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698,

701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (*citing Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (*quoting Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.     Discussion**

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for reversal and remand. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

    **A.     The ALJ Properly Weighed Plaintiff's Subjective Complaints of Pain**

Plaintiff's argument is that the ALJ did not give her subjective complaints of pain sufficient weight. Specifically, Plaintiff urges that the ALJ's decision is not supported by substantial evidence

because the ALJ did not properly apply the Eleventh Circuit Pain Standard. The law that governs subjective complaints of pain is well-settled:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (some citations omitted).

Plaintiff alleges disabling low back and leg pain. (Tr. 58, 194). The ALJ found that Plaintiff has severe impairments of lumbar spine disorders and high blood pressure. However, the ALJ found that Plaintiff's allegations regarding her limitations, the intensity, and duration of their pain were not entirely credible. The ALJ noted that Dr. Saltz, Plaintiff's treating physician, never indicated that Plaintiff was disabled or otherwise unable to work. Dr. Saltz placed no work restrictions on Plaintiff. Records from Quality of Life note the denial of pain by Plaintiff. Dr. Born's examination of Plaintiff was essentially unremarkable with the exception of some joint space narrowing and spondylolisthesis at L4-L5. Further, he reported no work related limitations, nor were any indicated. Dr. Jennings concluded that Plaintiff could perform a significant range of light work. Dr. Roque reported no more than mild mental limitations. Finally, the ALJ found that the latest medical records reflected that Plaintiff was instructed to get a job.

Considering the ALJ's findings in light of the applicable standard of review, the court finds no error. The ALJ properly considered Plaintiff's history of low back pain and the treatment she received. He weighed Plaintiff's subjective complaints and concluded that, while the medical

evidence supported a finding of some pain and restrictions, the evidence did not show that Plaintiff was disabled because of her pain. In discounting Plaintiff's subjective testimony, the ALJ relied upon substantial evidence and properly applied the pain standard which has been formulated by the Eleventh Circuit in *Wilson*. Accordingly, Plaintiff's argument fails.

## VI. Conclusion

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this _____12th_____ day of February, 2009.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE